FILED

February 10, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 3:14 PM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | |
|---|---|
| Christopher Wade Tolbert,<br>Employee,<br>v.<br><br>MPW Industrial Services at<br>Volkswagen,<br>Employer,<br><br>And<br><br>Zurich North America Ins. Co.,<br>Insurance Carrier. | Docket No.: 2015-01-0199<br><br>State File No.: 51113-2015<br><br>Judge Thomas Wyatt |

---

## EXPEDITED HEARING ORDER FOR ADDITIONAL TEMPORARY DISABILITY BENEFITS

---

THIS CAUSE came before the undersigned Workers' Compensation Judge on January 11, 2016, upon the Request for Expedited Hearing (REH) filed by the employee, Christopher Wade Tolbert, pursuant to Tennessee Code Annotated section 50-6-239 (2015). Mr. Tolbert seeks additional temporary disability benefits from the employer, MPW Industrial Services at Volkswagen (MPW), arising from an alleged work-related injury to his head, neck, and back occurring June 29, 2015. (T.R. 1 at 1; 2 at 1; Ex. 1 at 1.)

The central legal issue raised during this Expedited Hearing is whether and to what extent Mr. Tolbert is entitled to additional temporary partial disability benefits. This issue includes calculation of the applicable weekly compensation rate. For the reasons set forth below, the Court finds Mr. Tolbert is entitled to additional temporary disability benefits.

1

## History of Claim

Mr. Tolbert is a fifty-two-year-old resident of Chattanooga, Hamilton County, Tennessee. (T.R. 1 at 1.) On the date of injury he had worked for less than a year as a cleaning technician for MPW, a provider of cleaning services at the Volkswagen plant in Chattanooga, Tennessee. (Ex. 12; Ex. 13; Ex. 17.)[1] On June 29, 2015, Mr. Tolbert sustained a compensable injury to his head, neck, shoulders, and arms when he fell from a ladder to the floor while performing duties in the course and scope of his employment with MPW. (Ex. 1 at 1; Ex. 2; Ex. 6; Ex. 7.)

Shortly after he fell, Mr. Tolbert travelled by ambulance to the emergency department at Erlanger Medical Center, where he underwent CT scans of the brain and cervical spine. (Ex. 1; Ex. 7.). Physicians at Erlanger diagnosed Mr. Tolbert with an acute strain of the cervical spine and released him with prescriptions of Percocet and Robaxin. *Id.* The paperwork Mr. Tolbert received upon his discharge from Erlanger indicated he "[m]ay return to work when cleared by UT Family Practice." (Ex. 7 at 4.)[2]

Mr. Tolbert next received treatment for his work injuries on July 10, 2015. (Ex. 8.) Jennifer Craddock, the adjuster handling Mr. Tolbert's claim, testified she assigned a case manager who arranged for Dr. Jayant Eldurkar, a physician at Workforce Corporate Health, to see Mr. Tolbert. Mr. Tolbert testified MPW and its carrier scheduled the appointment with Dr. Eldurkar without first providing him a panel. (Ex. 1 at 1.) Ms. Craddock testified she had not provided a panel to Mr. Tolbert at the time he saw Dr. Eldurkar.

Dr. Eldurkar diagnosed Mr. Tolbert with a strain and sprain of the cervical spine and ordered an MRI. (Ex. 8.) He opined Mr. Tolbert's injury was work-related and prohibited him from pushing, pulling, or lifting over five pounds; working above ground level; and operating commercial vehicles. *Id.* Dr. Eldurkar instructed that the work assigned Mr. Tolbert allow him to sit and stand as needed. *Id.* Mr. Tolbert testified Dr. Eldurkar gave him a neck brace to wear.

On July 13, 2015, Mr. Tolbert presented to work at MPW under the restrictions imposed by Dr. Eldurkar. He and his direct supervisor, Jay P. Morgan, signed a Modified Duty Agreement that obligated MPW to assign Mr. Tolbert work that complied with the restrictions placed on his activities by the treating physician. (Ex. 4.) The agreement also

---

[1] Mr. Tolbert testified, and his resume reflects (Ex. 13), that he began working for MPW in October, 2014. Documentation submitted by MPW (Ex.12; Ex. 17) indicated a start date in March 2015. The Objection Mr. Tolbert's attorney filed to the earnings records submitted by MPW (Ex. 10), indicated Mr. Tolbert was employed by a temporary agency when he began working at MPW in October 2014, and was hired as an MPW employee in March 2015, after working a probationary period of six hundred hours. *Id.*

[2] The report initially indicated the release to return to work would come from "Worforce." (Ex. 7 at 4.) The document given Mr. Tolbert contains a hand-written notation striking through the word "Workforce" and adding the words "UT Family Practice." *Id.*

bound Mr. Tolbert to abide by the restrictions in performing the work MPW assigned him. *Id.*

Mr. Tolbert testified that, before MPW actually assigned to a specific job, Dave Folpa, a manager for MPW, told him to take off the brace Dr. Eldurkar gave him. Mr. Tolbert declined because Dr. Eldurkar had instructed him to wear the brace. Mr. Tolbert also testified he told Stephanie, a human resources representative at MPW, he was on medication, to which she responded he could not work while medicated. Mr. Tolbert testified Mr. Morgan confirmed Stephanie's statement. Mr. Tolbert testified he left MPW's office because it was clear to him MPW had no available work under the restrictions Dr. Eldurkar placed on his activities. Mr. Tolbert testified he has not worked anywhere since the date of injury.

On July 22, 2015, Attorney Carmen Ware filed a Petition for Benefit Determination (PBD) on Mr. Tolbert's behalf, listing three disputed issues: (1) MPW sent Mr. Tolbert to Dr. Eldurkar without first offering him a panel; (2) MPW failed to provide Mr. Tolbert a panel for follow-up care; and (3) MPW failed to pay temporary disability benefits. (T.R. 1 at 1.) Ms. Ware began communicating with Ms. Craddock and, on July 23, 2015, arranged for the provision of a panel from which Mr. Tolbert selected Dr. Scott Hodges, an orthopedic surgeon, for authorized treatment. (Ex. 6 at 2; Ex. 15; Ex. 16.)

MPW and its carrier initiated temporary total disability benefits on August 4, 2015, but only after Dr. Hodges took Mr. Tolbert completely off work. Ms. Craddock testified she declined to pay temporary disability benefits for periods prior to August 4, 2015, because MPW indicated to her it had light duty work available to accommodate Mr. Tolbert's restrictions.[3]

MPW paid temporary disability benefits at the weekly rate of $253.35. (Ex. 11.) Both parties indicated at the Expedited Hearing that MPW ceased temporary disability benefits on October, 15, 2015, the date Dr. Hodges placed Mr. Tolbert at maximum medical improvement. MPW has not paid temporary disability benefits after October 15, 2015.

MPW calculated the compensation rate it paid Mr. Tolbert by multiplying his hourly rate of pay, $9.50, by forty hours. (Ex. 12.) During the Expedited Hearing, MPW submitted a print-out itemizing wages paid Mr. Tolbert between March 15, 2015, and July 24, 2015. (Ex. 17.) Ms. Craddock testified she did not file a C-41 Wage Statement in this claim because MPW sent Mr. Tolbert's wage information in a spread sheet format

---

[3]Ms. Ware notified Ms. Craddock by email on July 24, 2015, that Stephanie and Mr. Morgan at MPW told Mr. Tolbert he could not work while medicated. (Ex. 15 at 1-3.) Ms. Craddock responded on July 27, 2015, that MPW had light duty available and indicated she would send Ms. Ware a job description. *Id.* at 4. By email dated August 5, 2015, Ms. Ware notified Ms. Craddock she had not received a job description from her and that, on August 4, 2015, Dr. Hodges had taken Mr. Tolbert completely off work. *Id.* at 4-5.

3

and not on the C-41 form. Excluding payments made by MPW after the date of injury, the spread sheet documents an average weekly wage of $391.92 and, thus, a weekly compensation rate of $261.28. *Id.*

Mr. Tolbert currently receives authorized care for his work injuries from Dr. Stephen Dreskin, a pain management specialist. (Ex. 5 at 2; Ex. 6 at 3.) In his initial treatment note dated November 11, 2015, Dr. Dreskin deferred the determination of Mr. Tolbert's restrictions to Dr. Hodges. (Ex. 5 at 23.) Dr. Dreskin did not address restrictions or maximum medical improvement in documenting the next three treatment visits with Mr. Tolbert. (Ex. 5 at 6-18.)

Dr. Dreskin first addressed Mr. Tolbert's restrictions, and the issue of maximum medical improvement, in his treatment note of January 6, 2016. (Ex. 5 at 2-4.) In this note, Dr. Dreskin opined that Mr. Tolbert should attain "MMI from a pain management . . . standpoint at his next visit (in four weeks)." *Id.* at 4. In the same note, he also restricted Mr. Tolbert from lifting greater than ten pounds occasionally; from performing overhead work; from repetitive use of either extremity; and from driving, working around dangerous machinery, or working at dangerous heights while under the influence of prescribed narcotic medication. *Id.* Dr. Dreskin indicated the above restrictions would remain in place until he ordered a functional capacity examination. *Id.*

Dr. Dreskin has prescribed narcotic medication, among other medications, to treat Mr. Tolbert's injuries following all treatment visits. He prescribed Trazadone at the initial visit and prescribed Hydrocodone, taken four times per day, following all subsequent visits. (Ex. 5 at 4, 8, 12, 16, 23.)

MPW and its carrier have authorized Mr. Tolbert for treatment by Dr. Gina Delgardo for the psychiatric aspect of his injury. (Ex. 6 at 1.) Mr. Tolbert testified he will see Dr. Delgardo for the first time at the end of February.

### Motion to Continue Expedited Hearing

David Weatherman, counsel for MPW, failed to appear at the scheduled time for the in-person Expedited Hearing in this claim. Mr. Tolbert and his attorney appeared at the scheduled time for the hearing. When contacted by telephone, Mr. Weatherman objected to the Court hearing the Expedited Hearing as scheduled because he believed he and Ms. Ware had previously reached agreement as to the disputed issues in the claim.

The Court allowed counsel an opportunity to discuss this matter outside the presence of the Court. After this period of discussion, Mr. Weatherman and Ms. Ware reported their clients had differences they could not resolve. Mr. Weatherman requested a continuance on the ground that he believed the parties had resolved the issues between them and, until the telephone call, did not know which issues Ms. Ware intended to

4

present at the Expedited Hearing.

In considering Mr. Weatherman's request for a continuance, the Court considered the order it entered following a Show Cause Hearing conducted on December 21, 2015. During that hearing, Ms. Ware explained, without giving details, that the parties had resolved issues of concern to her client when she filed this claim, but other issues remained unresolved. (T.R, 6 at 1.) She and Mr. Weatherman indicated they were hopeful the parties could resolve the remaining issues. *Id.* at 1-2. Based on the above, the Court declined to dismiss the claim at the Show Cause hearing and ordered the parties to schedule the REH that Ms. Ware filed on November 25, 2015. *Id.*

The Court was not involved in the process by which the parties scheduled the January 11, 2016 Expedited Hearing. However, in considering Mr. Weatherman's requested continuance, the Court noted the Clerk's file contained an email from Mr. Weatherman's secretary that Mr. Weatherman was available to participate in an Expedited Hearing on January 11, 2016. (T.R. 12.)

In view of the above, the Court found Mr. Weatherman did not establish his contention that the parties had resolved their issues prior to the Expedited Hearing. The Court, thus, overruled Mr. Weatherman's objection and allowed him to participate in the Expedited Hearing by telephone. The Court also allowed Mr. Weatherman to submit the testimony of adjuster Jennifer Craddock by telephone.

Nothing transpired during the Expedited Hearing that caused the Court to question its denial of Mr. Weatherman's request for a continuance. The evidence introduced during the Expedited Hearing concerned the issue of whether Mr. Tolbert was entitled to additional temporary disability benefits and whether MPW utilized the correct compensation rate in paying the temporary benefits it previously paid Mr. Tolbert. The DCN issued by the mediator assigned to this claim listed "[w]hether Employee is entitled to any past or future temporary partial disability benefits" and "[w]hether Employee's compensation rate has been calculated correctly" as issues in dispute between the parties. (T.R. 2 at 2.) The DCN clearly indicates that, prior to the Expedited Hearing, Mr. Weatherman and his client had notice of the disputed nature of the issues raised by Mr. Tolbert during the Expedited Hearing.

**Objection to the C-41 Wage Statement Filed by MPW**

During the Expedited Hearing, Ms. Ware asked the Court to set Mr. Tolbert's compensation rate at the maximum rate because MPW failed to file a C-41 Wage Statement. Ms. Craddock admitted she did not file a C-41 Wage Statement. In response, Mr. Weatherman submitted a print-out itemizing the wages MPW paid Mr. Tolbert during his tenure of employment. (Ex. 17.) The Court did not review the document until

5

after the hearing concluded.[4]

On January 19, 2016, Ms. Ware filed an objection to the wage print-out, objecting "to the authenticity, accuracy and timeliness of the Wage Statement." (T.R. 11 at 1.) In the objection, Ms. Ware renewed her contention that the Court set Mr. Tolbert's compensation rate at the maximum rate because MPW and its carrier did not file a C-41 Wage Statement and, alternatively, argued MPW should submit a fifty-two week Wage Statement of a similarly-situated employee. *Id.* at 1-2. Mr. Weatherman responded to Ms. Ware's objection by arguing that, because Ms. Ware did not raise the compensation rate issue at the Show Cause Hearing, raising the issue at the Expedited Hearing was inequitable to his clients.

Mr. Tolbert's request for payment of his temporary disability benefits at the maximum compensation rate is without merit. The statutory authority for the request, found at Tennessee Code Annotated section 50-6-201(c) (2013), was deleted by the 2013 reforms to the Workers' Compensation Law. *See* Compiler's Notes to Tennessee Code Annotated section 50-6-201 (2015).

The Court will not require MPW to submit a Wage Statement showing the fifty-two week earnings of an employee similarly situated to Mr. Tolbert. The earnings information submitted by MPW documents a pattern of regular earnings over a sufficiently long period of time to provide a reliable indication of Mr. Tolbert's earning capacity at MPW. (Ex. 17.)

The compensation rate issue in this claim boils down to a determination whether the earnings information submitted by MPW verifies its claim Mr. Tolbert's compensation rate is $253.35 per week. The Court finds MPW will not suffer inequity by the Court reviewing the wage information MPW itself provided to determine if MPW paid Mr. Tolbert temporary disability benefits at the correct compensation rate. Accordingly, Mr. Weatherman's objection is overruled.

**Findings of Fact and Conclusions of Law**

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n*, 725 S.W.2d 935, 937 (Tenn. 1987);[5] *Scott v. Integrity Staffing Solutions*, No.

---

[4] Mr. Weatherman submitted the print-out by email because he participated by telephone.

[5] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation

2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

*Mr. Tolbert Is Entitled to Additional Temporary Disability Benefits.*

In *Jones v. Crencor Leasing and Sales,* No. 2015-01-0332, 2015 TN Wrk. Comp. Bd. LEXIS 48, at *7-8 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015), the Tennessee Workers' Compensation Appeals Board, citing *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978), held, "[a]n injured worker is eligible for temporary disability benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability." The Appeals Board further held in *Jones* that an injured worker may qualify for temporary partial disability benefits if the employer cannot accommodate the restrictions under which the worker is released to return to work or provide the restricted worker with earnings that equal or exceed the pre-injury average weekly wage. *Id.* at *7-8.

Tennessee Code Annotated section 50-6-207(2)(B) (2015) defines how the compensation rate for temporary partial disability benefits is calculated. Per the above provision, the compensation rate paid for temporary partial disability benefits is "sixty-six and two-thirds percent (66 2/3%) of the difference between the average weekly wage of the worker at the time of the injury and the wage the worker is able to earn in the worker's partially disabled condition." *Id.*

In view of the above authority, the Court finds Mr. Tolbert established that, at a hearing on the merits, he is likely to prevail in establishing his claim to additional temporary disability benefits. The Court discusses below Mr. Tolbert's entitlement to temporary partial disability benefits during the specific periods of time for which he claims said benefits.

*Mr. Tolbert Is Entitled to Temporary Partial Disability Benefits from June 29, 2015, until July 10, 2015.*

The Erlanger emergency provider who treated Mr. Tolbert on the date of injury

---

Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

removed him from work until a medical provider cleared him to return to work. (Ex. 7 at 4.) Mr. Tolbert did not see another physician for his work injury until he saw Dr. Eldurkar on July 10, 2015. (Ex. 3; Ex. 8.) Accordingly, the Court finds that, at a hearing on the merits, Mr. Tolbert established he is likely to prevail in his claim that he is entitled to temporary total disability benefits from the date of injury, June 29, 2015, until he saw Dr. Eldurkar on July 10, 2015.

*Mr. Tolbert Is Entitled to Temporary Partial Disability Benefits from July 10, 2015, until August 3, 2015.*

Dr. Eldurkar released Mr. Tolbert to return to work on July 10, 2015, but under significant restrictions. (Ex. 3; Ex. 8.) Mr. Tolbert presented to MPW on July 13, 2015, for a restricted-duty assignment. (Ex. 4.) On that date, Mr. Tolbert and his supervisor signed a Modified Duty Agreement requiring that MPW "will ensure that [Mr. Tolbert's job assignment] is within the stated restrictions" and that Mr. Tolbert "will abide by these rules and work restrictions so long as they remain in place[.]" *Id.*

Only Mr. Tolbert testified regarding what transpired when he presented to MPW for restricted-duty work. Mr. Tolbert testified that MPW's manager told him to remove the neck brace the authorized treating physician gave him, and that other MPW management personnel told him he could not work while taking the medication Dr. Eldurkar prescribed for his work injury.[6] Given this unrebutted testimony, the Court finds that, at a hearing on the merits, Mr. Tolbert will likely prevail in establishing that MPW failed to provide him work that accommodated his restrictions.

The Court finds the emails between Ms. Ware and Ms. Craddock corroborate Mr. Tolbert's testimony regarding what happened when he attempted to return to work at MPW under restrictions. Ms. Ware notified Ms. Craddock by email on July 24, 2015, that Stephanie, a human resources manager at MPW, and Mr. Morgan, Mr. Tolbert's direct supervisor, told Mr. Tolbert he could not work while medicated. (Ex. 15 at 1-3.) Ms. Craddock's email response did not contradict the information given in Ms. Ware's email, but simply stated that she would forward a job description indicating the light duty job available for Mr. Tolbert at MPW. *Id.* at 4. By email dated August 5, 2015, Ms. Ware notified Ms. Craddock she had not received a job description from her and that, on August 4, 2015, Dr. Hodges had taken Mr. Tolbert completely off work. *Id.* at 4-5.

In view of the above, the Court finds that, at a hearing on the merits, Mr. Tolbert will prevail in establishing that MPW and its carrier wrongfully denied him temporary partial disability benefits from July 10, 2015, the date Dr. Eldurkar released him to return to work under restrictions, through August 3, 2015, the date temporary total disability benefits were initiated because Dr. Hodges completely removed Mr. Tolbert from work.

---

[6] The documentation from Occupational Health Services indicates Dr. Eldurkar prescribed Robaxin. (Ex. 3; Ex. 8.)

*Mr. Tolbert Is Not Entitled to Temporary Disability Benefits From October 15, 2015,*
*Until November 11, 2015.*

During the Expedited Hearing, Mr. Tolbert contended he is entitled to temporary disability benefits after October 15, 2015, because, on January 6, 2016, Dr. Dreskin restricted his activities and stated he had not attained maximum medical improvement from a pain management standpoint. The Court finds Mr. Tolbert is not entitled to temporary disability benefits from October 15, 2015, the date Dr. Hodges placed him at maximum medical improvement, until November 11, 2015, the date he first saw Dr. Dreskin.

MPW was within its rights in terminating temporary disability benefits on October 15, 2015, when Dr. Hodges placed Mr. Tolbert at maximum medical improvement. Since Mr. Tolbert did not begin treatment with Dr. Dreskin until November 11, 2015 (Ex. 5 at 19), Dr. Dreskin's opinions cannot form the basis of an award of temporary disability benefits from October 15, 2015, until November 11, 2015. Mr. Tolbert did not introduce any expert medical opinion indicating he was under restrictions and was not at maximum medical improvement during the above-stated timeframe. Accordingly, the Court finds that, at a hearing on the merits, Mr. Tolbert will not prevail in establishing he is entitled to temporary disability benefits from October 15 to November 11.

*Mr. Tolbert Is Entitled to Temporary Partial Disability Benefits from November 11,*
*2015, until He Returns to Work or Dr. Dreskin Places Him at Maximum Medical*
*Improvement.*

Dr. Dreskin did not restrict Mr. Tolbert's activities due to his work injuries, nor did he find Mr. Tolbert was not at maximum medical improvement from a pain management standpoint, until his fifth treatment visit with Mr. Tolbert on January 6, 2016. (Ex. 6 at 2-23.) Accordingly, MPW had no information upon which to assess whether Mr. Tolbert was entitled to a period of temporary disability benefits after October 15, 2016, until it received a copy of Dr. Dreskin's January 6, 2015 treatment note. Once it received that note, however, the Court finds MPW had a duty to consider whether Mr. Tolbert was entitled to additional temporary partial disability benefits, both before and after January 6, 2015.

In *Cleek v. Wal-Mart Stores, Inc.,* 19 S.W.3d 770, at 777 (Tenn. 2000), the Supreme Court held a period of temporary disability benefits "may be revived" by a worker's continued work-related disability, even though an earlier period of disability terminated when the worker returned to work. The Court in *Cleek* cited approvingly the Special Workers' Compensation Appeals Panel's opinion in *Wise v. Murfreesboro Health Care Center,* (no number in original), 1994 Tenn. LEXIS 389, at *9 (Tenn. Workers'

Comp. Panel Dec. 22, 1994), which held that a second period of temporary disability benefits was appropriate when, due to the need for additional surgery to treat a work injury, a previous assessment of maximum medical improvement "proved to be premature."[7]

The Court finds that, at a hearing on the merits, Mr. Tolbert will likely prevail in establishing Dr. Dreskin, if asked, would have placed him under restrictions and found he had not attained maximum medical improvement during all periods during which he treated Mr. Tolbert. The Court finds that, because Dr. Dreskin prescribed narcotic medication to treat Mr. Tolbert's injuries on each occasion he saw him, he would have, if asked, restricted Mr. Tolbert from driving, operating equipment and working around equipment. Additionally, MPW had not allowed Mr. Tolbert to work while on medication when he submitted for restricted-duty work earlier, thus the Court finds no reason to believe that, after November 11, 2015, MPW would have allowed Mr. Tolbert to work while taking narcotic pain medication.

MPW offered no evidence indicating it offered Mr. Tolbert light duty work after November 11, 2015. The Court accepts as credible Mr. Tolbert's testimony that he has not worked anywhere since his injury on June 29, 2015. Accordingly, the Court awards Mr. Tolbert temporary partial disability benefits from November 11, 2015, the first date he came under Dr. Dreskin's care, until he either returns to work or attains maximum medical improvement from his work injuries.

### Mr. Tolbert's Compensation Rate is $261.28 Per Week.

The earnings records submitted by MPW establish that Mr. Tolbert earned $6,270.77 during the sixteen weeks he worked for MPW. (Ex. 17.) Accordingly, he earned an average weekly wage of $391.92, which equates to a weekly compensation rate of $261.28. *See* Tenn. Code Ann. § 50-6-207(1)(A) and (2)(A).

Mr. Tolbert has not worked since the date of injury, thus the Court finds he earned $0 in his disabled condition. Accordingly, the compensation rate applicable to all periods during which the Court awards Mr. Tolbert temporary partial disability benefits is $261.28 per week. *See* Tenn. Code Ann. §50-6-207(2)(B) (2015).

MPW paid Mr. Tolbert temporary partial disability benefits in the amount of $253.35 from August 3, 2015, until October 15, 2015. In view of its own earnings records, the above-stated rate shorted Mr. Tolbert $7.93 per week during that period of time.

---

[7] The Court in *Cleek* cited the then-applicable remedial construction of the Workers' Compensation Act in its opinion. *See* 19 S.W.3d at 777. The Panel in *Wise* did not cite the remedial construction language. In that the *Wise* opinion is closer akin to the facts of this claim, the Court finds its holding has precedential effect in this claim because the result therein was not dependent on a remedial construction of the Workers' Compensation Law.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Tolbert is awarded temporary total disability benefits at the rate of $261.28 per week from June 30, 2015, until July 9, 2015;

2. Mr. Tolbert is awarded temporary partial disability benefits at the rate of $261.28 from July 10, 2015, until August 3, 2015;

3. Mr. Tolbert is awarded additional temporary total disability benefits at the rate of $7.93 per week from August 4, 2015, until October 14, 2015, to compensate for the underpayment of temporary total disability benefits during the stated period;

4. Mr. Tolbert is awarded temporary partial disability benefits at the rate of $261.28 per week from November 11, 2015, until he either returns to work or attains maximum medical improvement.

5. The Court finds Attorney Carmen Ware provided substantial and beneficial legal services to Mr. Tolbert in presenting his claim for additional temporary disability benefits and awards Ms. Ware an attorney's fee based on twenty percent of the temporary disability benefits awarded herein, including the prospective award of temporary disability benefits.

6. This matter is set for a Status Conference on **April 15, 2016, at 9:00 a.m. Eastern Time.**

**ENTERED this the 10th day of February, 2016.**

**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

Status Conference:

A Status Conference has been set with **Judge Thomas Wyatt, Court of Workers' Compensation Claims. You must call 855-747-1721, toll-free, or at 615-**

11

741-3061 to participate.

Please Note: **You must call in on the scheduled date/time to participate.** Failure to call in may result in a determination of the issues without your further participation.

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

The Court reviewed the following documents and designates these documents as the Technical Record:[8]

1. PBD, filed July 22, 2015;
2. DCN, filed August 14, 2015;
3. Show Cause Order, filed November 24, 2015;
4. REH, filed November 25, 2015;
5. Employee's Response to Show Cause Order, filed November 25, 2015;
6. Show Cause Order, filed December 22, 2015;
7. Email correspondence regarding scheduling of REH (designated as "Dates re hearing" in court file);
8. Employee's Notice of Objection to C-41 Wage Statement Submitted by Employer, filed January 19, 2016;
9. Employer's Response to Employee's Notice of Objection to C-41 Wage Statement, filed February 2, 2016;
10. Employee's Notice of Objection to C-41 Wage Statement Submitted by Employer, filed January 19, 2016;
11. Response of Employer to Employee's Notice of Objection to C-41 Wage Statement, filed February 2, 2016; and
12. Email correspondence regarding scheduling of Expedited Hearing.

The Court admitted the following documents into evidence and reviewed them in reaching its decision:

1. Affidavit of Christopher Tolbert;
2. Records of Baroness Erlanger Emergency Department;
3. Return to Work Status Sheet from Workforce Corporate Health, dated July 10, 2015;
4. Modified Duty Agreement signed July 13, 2015;
5. Records of Tennessee Valley Pain Management;
6. Panel Forms (C-42s);
7. Additional records of Baroness Erlanger Emergency Department;
8. Return to Work Status Sheet from Workforce Corporate Health, dated July 10, 2015;
9. Worker's Compensation Consult Follow-up signed by Dr. Scott Hodges;
10. Paycheck for period ending June 28, 2015;
11. Workers' compensation check for period ending August 17, 2015;

---

[8] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

14

12. Note from MPW documenting wage and hiring information;
13. Resume of Christopher Tolbert;
14. Statement from Tennessee Department of Treasury documenting maximum weekly compensation payment on date of injury;
15. Email correspondence between attorney for Mr. Tolbert and adjuster Jennifer Craddock;
16. Email correspondence between attorney for Mr. Tolbert and adjuster Jennifer Craddock;
17. Print-out documenting the wages MPW paid Mr. Tolbert; and
18. July 28, 2015 correspondence from MPW to Mr. Tolbert.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order for Additional Temporary Disability Benefits was sent to the following recipients by the following methods of service on this the 10th day of February, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Carmen Ware, Attorney | | | X | cyware@thewarelawfirm.com |
| David Weatherman, Attorney | | | X | David.weatherman@zurichna.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov